UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA              PLAINTIFF

v.              CRIMINAL ACTION NO. 3:17-CR-100-CRS

TREYVON MILES, et al.              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on the Defendants' joint objection to the Magistrate's Report and Recommendation ("Report"). (DN 54.) The Defendants, Treyvon Miles, Chillvon Randolph, and Marcus Knight, filed motions to suppress evidence obtained during a traffic stop that occurred on November 27, 2016. The matter was referred to the Magistrate Judge Colin Lindsay ("Judge Lindsay") for a report and recommendation. After holding two hearings, Judge Lindsay recommended that the Defendants' motions to suppress be denied. The Defendants timely filed an objection to the Report. For the following reasons, the court will adopt the Report and Recommendation in full.

### I. BACKGROUND

On November 27, 2016, police officers with the Ninth Mobile Division of the Louisville Metro Police Department pulled over a vehicle for traffic violations. The vehicle contained four occupants, three of whom are Defendants in this case. Maverick, a canine trained to detect the odors of certain narcotics, arrived at the scene and alerted to the vehicle. Acting on Maverick's alert, the officers discovered four handguns in the vehicle's glove compartment.

The Defendants filed motions to suppress evidence under the premise that the evidence was obtained in an illegal search and seizure in violation of the Defendants' Fourth Amendment rights. (DN 25; DN 33.) The United States argued that the warrantless search of the Defendants' vehicle was permissible under the "automobile exception," which allows law enforcement officers to legally search a vehicle without a search warrant if the vehicle is readily mobile and the officers have probable cause to search it. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Hearings on this issue were held before Judge Lindsay on November 6, 2017 and December 14, 2017, whereupon evidence was presented and witnesses were heard. (DN 39; DN 42.)

Judge Lindsay entered a Report and Recommendation on March 19, 2018 recommending that the Defendants' motions to suppress be denied. (DN 51.) The Defendants timely filed an objection to Judge Lindsay's Report and the issue is now before this court. (DN 54.)

**II.    STANDARD**

The court considers *de novo* any objection to a magistrate judge's recommendation. Fed. R. Crim. P. 59(b)(3). After review, the court "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions. *Id*.

**III.    DISCUSSION**

The Defendants object to Judge Lindsay's Report on four grounds: (1) that the Report misperceives the Defendants' arguments as to the validity of the traffic stop; (2) that the United States did not meet its burden in showing that the canine sniff of the Defendants' vehicle did not unreasonably extend the traffic stop; (3) that the canine handler's failure to restrain the dog when it stuck its snout in the vehicle's open window amounted to an unlawful search; and (4) that the

United States did not provide sufficient evidence of the canine's training and reliability. The court will address each in turn.

1. Validity of the traffic stop

The Defendants first take issue with the Report's characterization of their argument on pretext. The Defendants claim that the record supports their argument that "police used the pretext of a traffic violation to justify the stop." (DN 46, 1.) They point to the bodycam footage of Detective Brian Wilson ("Detective Wilson"), wherein an officer can be heard stating that four young black men were involved in a drive-by shooting the previous day, presumably implying that the officers believed that the occupants could have been the same individuals involved in the shooting. (DN 42, Gov. Exh. 1, 01:43.) In light of this officer's statement, the Defendants object to Judge Lindsay's contention that the "defendants have not proffered anything more than their suspicions to suggest" that the traffic stop was pretextual. (DN 51, 7.)

In their objection, the Defendants express concern that the court may construe counsel as "being less than candid with the Court" in arguing that there exists evidence of pretext. (DN 54, 3 – 4.) However, Judge Lindsay ultimately concluded that a finding of whether or not the stop was pretextual is immaterial to the court's analysis. Judge Lindsay correctly stated, per the holding in *Whren v. U.S.*, that the constitutionality of traffic stops does not depend on the subjective intentions, or "reasonableness," of the individual officers involved as long as probable cause of a traffic violation exists. 517 U.S. 806 (1996). Since any factual findings on the issue of pretextuality is immaterial to the validity of a traffic stop, the court finds that Judge Lindsay's characterization of the evidence on pretextuality bears no consequence to the conclusions presented in his Report. As such, the court adopts the Report's findings concerning the analysis of pretext.

The Defendants next claim that Judge Lindsay's conclusion that the traffic stop was lawful is "unnecessary to the analysis" when, according to the Defendants, "objections to the traffic stop [ ] were not made." (DN 54, 4.) While the Defendants may not have objected to the validity of the traffic stop, an analysis of the validity of the traffic stop is necessary for the application of the automobile exception as asserted by the United States. In order for the United States to succeed under this theory, it must show that: (1) the officers conducted a lawful traffic stop of the vehicle; and (2) the officers had probable cause to believe the Defendants' vehicle contained contraband. *U.S. v. Ross*, 456 U.S. 798, 823 (1982). The United States presented evidence that the Defendants' vehicle was stopped only after the officers had probable cause that a traffic violation had occurred. As such, the court adopts the Report as to the conclusion that the traffic stop of the Defendants' vehicle was lawful.

2. Length of the Traffic Stop

Next, the Defendants object to Judge Lindsay's finding that the use of a canine dog to sniff around the exterior of the vehicle did not unreasonably extend the length of the traffic stop. The Defendants argue that gathering the licenses of all four individuals in the vehicle and running warrant checks on each of them, rather than simply the driver, unreasonably prolonged the length of the traffic stop to allow the canine time to conduct an exterior search around the vehicle.

In *Rodriguez v. United States*, the Supreme Court held that a traffic stop becomes a Fourth Amendment violation when the stop is extended beyond the time needed to handle the matter for which the stop was made. 135 S. Ct. 1609 (2015). Therefore, the Supreme Court found that, after a written warning for a traffic violation had been issued, an additional extension

of the traffic stop to allow a canine to sniff around the vehicle constituted an unreasonable seizure. *Id.*

After reviewing the police bodycam footage, Judge Lindsay found that the officers were actively checking the license and registration of the driver and conducting cursory interviews of the vehicle's occupants *while* Maverick was sniffing and alerting outside of the vehicle. In this case, the Magistrate found that because the perimeter sniff was completed within the time it took to conduct a normal traffic stop, the officers did not unreasonably extend the traffic stop under *Rodriguez*. The court agrees with the Magistrate's interpretation of the facts in light of the holding in *Rodriguez*.

Additionally, the Defendants argue that the United States has not met its burden of showing that "the stop could not have been terminated before Maverick arrived on the scene." (DN 54, 6.) The court rejects this argument, as the standard under *Rodriguez* does not require officers to complete traffic stops as quickly as possible, but only in the time "reasonably required to complete [the stop's] mission." *Id.* at 1616 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The court finds that the length of the traffic stop was completed in a reasonable amount of time in light of the circumstances. As such, the court adopts Judge Lindsay's conclusion that the traffic stop was not unreasonably extended.

3. The Exterior Canine Sniff

The Defendants object to Judge Lindsay's finding that Maverick did not violate the Defendant's Fourth Amendment rights when he twice stuck his snout into the vehicle's open driver's window before there existed probable cause to search the interior of the vehicle. Specifically, the Defendants argue that the failure of Maverick's handler "to restrain the dog" from putting his snout in the window amounted to a violation.

Judge Lindsay directly addressed this argument in the Report by comparing the facts of this case to those in *U.S. v. Sharp*, 689 F.3d 616 (6th Cir. 2012). The Sixth Circuit in *Sharp* joined several other circuits in holding that a trained police dog's "instinctive" behavior, such as jumping inside a car unprovoked to make a positive indication, does not amount to an unlawful search under the Fourth Amendment absent police misconduct. The trained K-9's behavior only violates the Fourth Amendment when an officer opens or causes to be open the point of entry, such a window, and when the officer orchestrates the dog's entry into the protected area. *Id.* at 620.

The Magistrate correctly concluded that the facts of this case show that the officers did not encourage Maverick to stick his nose into the window to get to the odor. Rather, Judge Lindsay noted that testimony indicated that Maverick may "go up high" to get as close to the source of an odor as possible. Maverick's behavior, Judge Lindsay found, was analogous to the behavior of the dog in *Sharp*, which was held not to be a search under the Fourth Amendment. The court agrees with this conclusion. While the Defendants argue that the violation at issue occurred because of the failure of the officer to "restrain" Maverick, the pivotal question is not whether the officer failed to restrain a dog acting under instinct, but whether the officer "did something to encourage or facilitate" the entry into a protected area. *Id*. at 620. Judge Lindsay found that there existed no such officer misconduct in the exterior sniff and the court agrees.

4. <u>The Reliability of the Canine</u>

Lastly, the Defendants object to the final portion of the Report, which found that Maverick was sufficiently reliable such that his alert to the car created probable cause for an interior search of the vehicle. In order to prove the training and reliability of a dog, a government may produce "evidence of a dog's satisfactory performance in a certification or

training program." *Florida v. Harris*, 568 U.S. 237, 247 (2013). If the dog is certified by a bona fide organization, "a court can presume. . . that the dog's alert provides probable cause to search." *Id*.

The Defendants object to the Report's statement that the Defendants "have not introduced any evidence that would undermine the veracity of Maverick's training or certifications." The Defendants argue that "they are under no such duty until better information as to the 'bona fides' of [the certification program] is provided." (DN 54, 8.)

In reaching his conclusion, Judge Lindsay reviewed the evidence concerning Maverick's certification requirements, his additional training, his record in passing certification programs, and his behavior while on duty. Upon producing such evidence, the government met its burden in showing that Maverick was sufficiently trained and certified. Therefore, Judge Lindsay correctly concluded that Maverick's indication was reliable such that it created probable cause. While it is not the Defendants' initial burden to prove that Maverick is unreliable, the government has presented sufficient evidence of Maverick's reliability. Thus, the Defendants must produce *some* evidence to the contrary in order to rebut the government's showing of reliability. Because the Defendants have not produced such evidence to the contrary, the court agrees with Judge Lindsay that Maverick is reliable such that his alert created probable cause.

**IV. CONCLUSION**

For the reasons stated, the court will adopt the report and recommendation in full. An order will be entered in accordance with this opinion.

April 20, 2018

Charles R. Simpson III, Senior Judge
United States District Court